IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GERALD JOHNSON & LAUREL JOHNSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:25-cv-00304 ) Judge Aleta A. Trauger ) |
| THE TORO COMPANY & SUNBELT RENTALS, INC., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM

To dig fence postholes on his property, plaintiff Gerald Johnson ("Johnson") rented from defendant Sunbelt Rentals, Inc. ("Sunbelt") a compact utility loader and auger, both manufactured by defendant The Toro Company ("Toro"). While Johnson was riding the loader on a hill, it tipped over, and he broke his neck. Johnson and his wife, Laurel Johnson, have sued the rental company and the manufacturer. Sunbelt moves to dismiss on the basis that no exceptions apply to its seller immunity under the Tennessee Products Liability Act.

For the reasons set forth herein, the court will deny Sunbelt's Motion.

I. LEGAL STANDARDS

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While Rule 8 does not require details, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555–57. A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). But a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Upon a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded facts as true and draws "all reasonable inferences" in the plaintiff's favor. *Romero v. City of Lansing*, 159 F.4th 1002, 1006 (6th Cir. 2025) (citing *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019)).

## II. PROCEDURAL HISTORY

The operative pleading is the First Amended Complaint ("FAC") (Doc. No. 37). As to Sunbelt, the plaintiffs allege strict product liability (Count II) (FAC ¶¶ 42–49), breach of implied warranty of merchantability (Count III) (*id.* ¶¶ 50–53), breach of implied warranty or fitness for a particular purpose (Count IV) (*id.* ¶¶ 54–59), negligence (Count V) (*id.* ¶¶ 60–67), gross negligence and punitive damages (Count VI) (*id.* ¶¶ 68–72), loss of consortium of Laurel Johnson (Count VII) (*id.* ¶¶ 73–76), and agency and joint venture liability[1] (Count VIII) (*id.* ¶¶ 77–84). The

---

[1] Although the defendant does not make this point, the court observes that agency and joint venture are not distinct causes of action, but rather theories of liability. *See, e.g.*, *Rotello v. Clayton Homes of Del., Inc.*, No. 3:03-cv-573, 2006 WL 2771018, at *4 (E.D. Tenn. Sept. 25, 2006); *Mut. Work Comp Sols., LLC v. BaronHR, LLC*, No. 3:23-cv-223-CEA-JEM, 2025 WL 2329546, at *13–

2

plaintiffs seek fourteen million dollars in compensatory damages and twenty-eight million dollars in punitive damages. (*Id.* 18.) Sunbelt has filed a Motion to Dismiss (Doc. No. 39) and a supporting Memorandum (Doc. No. 40), to which the plaintiffs have filed a Response (Doc. No. 47), and in further support of which Sunbelt has filed a Reply (Doc. No. 48).

### III. FACTS

To build a fence for his horses, on March 27, 2024 plaintiff Johnson rented posthole-digging equipment by phone from defendant Sunbelt's Murfreesboro facility. (FAC ¶¶ 9, 15.) Specifically, Johnson rented—and Sunbelt delivered to his home the same day—two pieces of equipment that Toro manufactured: a TX1000 stand-on compact utility loader and an auger, which attaches to the loader to dig holes. (*Id.* ¶ 10.) On April 1, 2024, Johnson was operating the loader and auger to dig postholes. (*Id.* ¶ 15.) While Johnson was riding the loader on a "slight hill tilted down and away to his right," it "turned over to Mr. Johnson's right, throwing him off the machine and onto a pile of rocks in a dry drainage area." (*Id.* ¶ 16.)[2] The fall broke Johnson's neck, resulting in his "almost complete paralysis from the neck down." (*Id.* ¶¶ 1, 17.) He now has "severely limited use of his arms and legs, cannot stand, [and] can barely move his arms." (*Id.* ¶ 17.)

Relevant to the pending motion are the allegations about the equipment's instructions and warnings. All told, the loader "lacked adequate instructions and/or warnings regarding its operation, particularly the dangers of operating on slopes or hills." (*Id.* ¶ 18.) First, "pictograms on the compact utility loader were inadequate to properly convey the danger or the specific degree of slope to be avoided." (*Id.* ¶ 30.) Second, Sunbelt had affixed to the loader a plastic canister,

---

14 (E.D. Tenn. July 25, 2025) (citation omitted), *R. & R. adopted,* No. 3:23-cv-223, 2025 WL 2323910 (E.D. Tenn. Aug. 12, 2025).

[2] As distinct from a "walk-behind" machine, the loader in this case was a "stand-on" machine (FAC ¶ 12), which is why Johnson fell when the loader tipped over.

3

which was not part of the manufacturer's design, in which Sunbelt had placed the loader's operator's manual. (*Id.* ¶ 19.) While in Sunbelt's control, the manual had become "dry rotted, deteriorated, and illegible" because Sunbelt "fail[ed] to properly maintain, store, or protect the manual in the canister." (*Id.* ¶ 20.) Third, affixed to both machines were QR codes that linked to digital operating manuals. Sunbelt and Toro "exercised substantial control over the labeling of the equipment, being responsible for maintaining and updating the QR code labels affixed to the machine" but, "acting in concert, failed to update the QR code labels and manuals as they came out so that end users would understand the guidelines and risks of operating the equipment." (*Id.* ¶¶ 24, 23.) As a result, the QR codes on the loader linked to "inadequate and outdated" manuals and safety information. (*Id.* ¶ 22.) For example, "[o]ne QR code label linked to an outdated manual that lacked necessary safety information, including a lack of sufficient tables or measuring devices needed to determine safe operating slopes." (*Id.*) And the loader's digital manual "had to be read in conjunction with" the auger's manual, linked by a separate QR code on the auger. (*Id.* ¶ 26.) This "cross-referencing" made "it unreasonably difficult for an ordinary user to determine safe operating parameters." (*Id.*)

Further, the plaintiffs allege that Sunbelt's "failure to maintain current QR code labels contributed to and was a proximate cause of Mr. Johnson's injuries." (*Id.* ¶ 24.) Relatedly, the plaintiffs allege that Sunbelt "altered or modified the safety warning systems of the Toro TX1000 [loader] from their original condition by leaving a deteriorated manual in a plastic canister that did not protect the instructions from damage." (*Id.* ¶ 25.) Together, the QR codes and illegible manual "were a substantial factor, and proximate cause, of Mr. Johnson's injuries because they prevented him from accessing critical safety information about the operation of the TX1000 [loader]." (*Id.*)

In addition to inadequate instructions that came with the equipment, Sunbelt itself provided Johnson no instructions or warnings. When Johnson called Sunbelt, he told them why he needed the equipment, but Sunbelt provided no warnings or instructions by phone. (*Id.* ¶¶ 9, 11.) When Sunbelt delivered the equipment, it placed the machines in Johnson's driveway and left, without speaking to him, returning once to replace the original, broken auger. (*Id.* ¶¶ 13–14.)[3] Because "Sunbelt delivered the equipment to a hilly area in Cannon County," it had "reason to know that the [loader] would reasonably be used on slopes or hills to dig postholes." (*Id.* ¶ 55.) Moreover, neither defendant "advised [him] of [the] manual" or "made Mr. Johnson aware of the QR code labels, or their significance." (*Id.* ¶¶ 19, 22.)

## IV. DISCUSSION

### A. Jurisdiction & Applicable law

The plaintiffs invoke this court's diversity jurisdiction under 28 U.S.C. § 1332(a). (*Id.* ¶ 5.) The plaintiffs are citizens of Tennessee. (*Id.* ¶ 2.) The defendants are citizens of Wisconsin, Minnesota, North Carolina, and South Carolina. (*Id.* ¶¶ 3–4.) The plaintiffs seek millions in damages. (*Id.* 18.) The court therefore has diversity jurisdiction, and Sunbelt does not argue otherwise. Because the court sits in diversity, it applies the substantive law of the forum state: Tennessee, as the parties agree. *Cash-Darling v. Recycling Equip., Inc.*, 62 F.4th 969, 974 (6th Cir. 2023).

### B. Tennessee Products Liability Act

The Tennessee Products Liability Act of 1978 ("TPLA"), Tenn. Code Ann. § 29-28-101 *et seq.*, sets forth the statutory scheme "for all claims arising from injuries alleged to have been

---

[3] The court infers from the FAC's allegation that Sunbelt "simply left the loader and auger attachment in the driveway" that no Sunbelt representative spoke to Johnson when delivering the equipment. (*Id.* ¶ 13.)

5

caused by products" and "supersede[s] common law claims for personal injuries stemming from alleged defects in products or failures to warn of the dangers associated with a product." *Coffman v. Armstrong Int'l, Inc.*, 615 S.W.3d 888, 895 (Tenn. 2021) (citing Tenn. Code Ann. § 29-28-102(6)). Further, the TPLA provides that "[n]o product liability action . . . shall be commenced or maintained against any seller, other than the manufacturer, unless" one of five enumerated exceptions applies. Tenn. Code Ann. § 29-28-106. Relevant here, a product liability action may lie against the seller, notwithstanding the TPLA's grant of immunity, where (1) the seller "exercised *substantial control* over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm" or (2) the seller "*[a]ltered or modified* the product, and the alteration or modification was a substantial factor in causing the harm." *Id.* § 29-28-106(1)–(2) (emphasis added).

The parties agree that Sunbelt is a non-manufacturer "seller" [4] under the TPLA, but the plaintiffs argue that both exceptions described above apply, while Sunbelt argues that neither does. (Doc. No. 40 at 2, 10–15; Doc. No. 47 at 1, 3–5; Doc. No. 48 at 3–4.) Because Sunbelt does not make an argument on the merits, the only question before the court is whether the plaintiffs have alleged facts that plausibly establish one of these two exceptions.[5]

---

[4] "'Seller' . . . includes a lessor . . . engaged in the business of leasing . . . a product." Tenn. Code Ann. § 29-28-102(7). Johnson leased the equipment from Sunbelt. (FAC ¶ 1.)

[5] Sunbelt makes an argument in the alternative, on the merits, only as to the plaintiffs' "agency and joint venture liability" claim (Doc. No. 40 at 15–16), which is not a cause of action in the first instance. Relatedly, the parties also contest whether all of the plaintiffs' claims fall under the TPLA. (*Contrast* Doc. No. 40 at 8–10; *with* Doc. No. 47 at 10–11.) Sunbelt argues that all of the plaintiffs' claims fall under the TPLA, so it is immune from suit. The plaintiffs argue that some of their claims do not fall under the TPLA, such that, even if Sunbelt prevails on its immunity argument on some claims, others survive. Because the court finds that Sunbelt is not immune from suit, the court need not decide the issue at this point.
6

The plaintiffs argue that they have pled facts that plausibly establish that both exceptions apply. (Doc. No. 47 at 3–5.) As the court recounted above, the FAC alleges that Sunbelt received from Toro an instruction manual that Sunbelt placed inside a storage canister affixed to the loader, where, under Sunbelt's control, the manual disintegrated into illegibility. (FAC ¶¶ 19–20.) The FAC alleges that Sunbelt was, with Toro, responsible for maintaining and updating the QR labels affixed to the machines but that the QR labels linked to outdated, confusing, and insufficient instructions—including regarding safe operation of loaders on slopes. (*Id.* ¶¶ 22–26.) And the FAC alleges that Sunbelt's failures to maintain the manual and to update QR codes were each "a substantial factor, and proximate cause, of Mr. Johnson's injuries, because they prevented him from accessing critical safety information about the operation of the TX1000 [loader]." (*Id.* ¶ 25.)

In response, Sunbelt argues that the foregoing is wholly conclusory. (Doc. No 40 at 11.) Sunbelt argues that no non-conclusory allegations support the plaintiffs' claim that it "exercised substantial control over the packaging and labeling" of the loader by adding a storage canister in which it allowed the manufacture's manual to disintegrate or by failing to update QR codes. (*Id.* at 11–12.) And Sunbelt argues that the plaintiffs' allegation that it altered or modified the loader by affixing a canister in which the manual deteriorated "fail[s] to identify any alteration or modification at all by Sunbelt, and certainly not one sufficient to satisfy" an exception to its seller immunity. (*Id.* at 13.) In support of its argument, Sunbelt cites one case, *Grant v. Kia Motors Corporation*, 185 F. Supp. 3d 1033 (E.D. Tenn. 2016), and includes in its brief *Grant*'s statement that "exercising substantial control over warnings is not grounds for the abrogation of immunity from products liability lawsuits under Tenn. Code Ann. § 29–28–106(1)." (*Id.* at 12–13 (quoting *Grant*, 185 F. Supp. 3d at 1040).)

In *Grant*, the plaintiff's minor children were involved in an accident while driving a Kia, and she brought a products liability action against both the car manufacturer and distributor. On summary judgment, the court presumed that the distributer was a "seller" under the TPLA but found that the "substantial control" exception did not abrogate the defendant's seller-immunity. *Grant*, 185 F. Supp. 3d at 1040–41. The plaintiff argued that the Kia distributor had exercised "substantial control" in two ways. First, the plaintiff claimed that the distributor was "responsible for handling customer complaints for the subject Kia vehicle and would have been in the best position to warn consumers of known defects." *Id.* at 1040 (quoting the plaintiffs' response brief). But the court "note[d] that exercising substantial control over warnings is not grounds for the abrogation of immunity from products liability under Tenn. Code. Ann. § 29-28-601(1)." *Id.* Second, the court considered the plaintiffs' allegation that the distributor "actively participates in developing service manuals, product brochures, service bulletins, and is the publishing corporation of the 2001 Kia Sportage Owner's Manual." *Id.* at 1040–41. The court found that, while the complaint "arguably alleges that the documents may have caused [the minors'] harm, Plaintiffs have failed to set forth any evidence . . . to support such a theory." *Id.* (citing Amended Complaint at 8, *Grant v. Kia Motors Corp.*, No. 4:14-cv-00079 (E.D. Tenn. Feb. 13, 2015), ECF No. 46).

Sunbelt misinterprets *Grant*'s discussion of "warnings" to apply to instruction manuals and related documents, rather than warnings a distributor might disseminate to the public upon discovering defects via customer complaints. (*See* Doc. No. 48 at 3–4 ("[T]hese conclusory allegations relate to an alleged failure to provide appropriate warnings materials to Mr. Johnson, which has been found 'not [to be] grounds for the abrogation of immunity[.]'" (quoting *Grant*, 185 F. Supp. 3d at 1040) (first alteration in original)).) And in any event, in *Grant* the court noted that the complaint "arguably" alleged that car documents may have caused the minors' injuries but

8

found for the defendant *on summary judgment* because the plaintiff had produced no evidence to support causation.

Courts interpreting the TPLA have dismissed product liability actions where the plaintiff alleged *no* basis for exceptions to seller immunity. *Accord Woods v. Tom Williams BMW*, No. 18-cv-1110-STA-JAY, 2019 WL 3462550, at *3 (W.D. Tenn. July 31, 2019) ("Courts applying Tenn. Code Ann. § 29-28-106 and its bar on seller liability have granted sellers' Rule 12(b)(6) . . . motions where a plaintiff alleged a products liability claim against the seller but failed to allege any facts to establish one of § 29-28-106's exceptions." (collecting cases)). For example, in *Thompson v. Raymond Corp.*, the court found that the plaintiff's mere allegation that the defendant had failed to properly inspect, maintain, or service a "lift truck" did not bring the seller defendant within Subsection 2's exception for sellers who modify or alter the product. *See* No. 1:25-cv-01010-STA-JAY, 2025 WL 863649, at *3 (W.D. Tenn. Mar. 19, 2025) ("Plaintiff fails, however, to explain how inspecting, maintaining, or servicing a product constitutes alteration or modification under the TPLA."). In *Dey v. Subaru of Am., Inc.*, the court granted the defendant seller's motion for summary judgment[6] where the plaintiff's claim that the "after sales service" could have prevented the car's failure was unsupported and did not raise a genuine issue of material fact as to the applicability of the TPLA's exceptions to seller immunity. 635 F. Supp. 3d 620, 626–7 (E.D. Tenn. 2022). *See also Woods*, 2019 WL 5866077, at *3 (granting the defendant's motion for summary judgment where the plaintiff "adduced no evidence to show any of the TPLA's exceptions . . . applies").

Courts interpreting other states' similar statutes have also dismissed actions where the plaintiffs alleged no facts that could plausibly establish exceptions to seller immunity. In *Garcia*

---

[6] And the court denied the plaintiff's motion to amend the complaint as futile.

*v. Premier Home Furnishings*, for example, the Southern District of Mississippi examined Mississippi's similar immunity provision in a case involving bunk beds.[7] The court found that, because discovery had revealed that the manufacturer, rather than the seller, "was responsible for packaging the beds with instructions and placing warning stickers on the beds before they left its facility," the seller did not "exercise substantial control" over the aspect of the product that caused the harm. No. 2:12-cv-167-KS-MTP, 2013 WL 6001345, at *3 (S.D. Miss. Nov. 12, 2013). And the court found that the complaint did not allege that the seller had "'altered or modified the product' by removing warning stickers or instructions supplied with the bunk beds before they were furnished to the Plaintiffs." *Id.* Accordingly, the court found that neither corollary exception to seller immunity applied. *Id.* By contrast, in this case, the plaintiffs allege that both defendants had control over the QR labels and that Sunbelt modified the loader such that the instruction manual disintegrated.

In *Johnson v. Ford Motor Co.*, the Northern District of Texas found that similar provisions in Texas's innocent-retailer statute did not apply and granted the car salesman and car dealers' motion to dismiss as improperly joined. No. 5:21-cv-023-H, 2022 WL 1471425, at *4–6 (N.D. Tex. May 10, 2022).[8] The court found that the plaintiff, injured in a car accident, did not allege

---

[7] Mississippi law provides, in relevant part, that in products liability actions:

[T]he seller or designer of a product other than the manufacturer shall not be liable unless the seller or designer *exercised substantial control* over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller or designer *altered or modified the product*, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought[.]

Miss. Code Ann. § 11-1-63(h) (emphasis added).

[8] Texas law provides that "'[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves' that the seller falls under one of seven enumerated exceptions." *Johnson*, 2022 WL 1471425, at *4 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)). Subsection (2) provides that sellers may be liable if they "altered

10

that the car dealers "'altered or modified' the car." *Id.* at *4 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)(2)). And the court found that the plaintiff alleged "no facts indicating that [either seller defendant] exercised any control—substantial or otherwise—over the content of the instruction manual or warnings that accompanied the vehicle regarding the accelerator pedal." *Id.* at *5. In this case, Johnson has alleged that Sunbelt modified the loader and that it exercised control over instruction manuals and warnings.

On the other hand, courts have declined to dismiss product liability actions where the plaintiffs have presented facts regarding control or modification. *See, e.g.*, *Scruggs v. Walmart Inc.*, 684 F. Supp. 3d 712, 714–17 (E.D. Tenn. 2023) (finding, at summary judgment, that the TPLA's "substantial control" exception to seller immunity applied where the plaintiff alleged that she was injured by a candle purchased at Walmart because Walmart reviewed candle labels and tested the candles (citing Tenn. Code Ann. § 29-28-106(1))); *Georgiou v. Battery Junction Corp.*, No. 4:21-cv-00418-O-BP, 2024 WL 890527, at *4 (N.D. Tex. Jan. 25, 2024) (finding that the seller's "placing of warnings on the manilla envelope [in which it shipped the product to the plaintiff] at a minimum raises a fact issue on whether it exercised substantial control over a warning that accompanied the product").

The court finds that the FAC's allegations, while not robust, are not conclusory, as Sunbelt contends. The plaintiffs have alleged that Sunbelt exercised substantial control over the equipment's instructions, in both paper and digital form. And the plaintiffs have alleged that the

---

or modified the product and the claimant's harm resulted from that alteration or modification." Subsection (4) provides that sellers may be liable if they "(A) . . . exercised substantial control over the content of a warning or instruction that accompanied the product; (B) the warning or instruction was inadequate; and (C) the claimant's harm resulted from the inadequacy of the warning or instruction."

inadequate instructions, particularly regarding proper loader use on a slope, caused Johnson's injuries.

## V. CONCLUSION

Accordingly, Sunbelt's Motion to Dismiss will be denied. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge